**PENNZOIL COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 84–4287.

United States Court of Appeals,
Fifth Circuit.

Sept. 24, 1984.

Baker & Botts, Charles M. Darling, IV, Stephen L. Teichler, Washington, D.C., Patricia A. Curran, Houston, Tex., for petitioner.

Jerome Feit, Sol., F.E.R.C., Thomas E. Hirsch, III, Washington, D.C., for respondent.

Robert N. Jensen, Jeremiah D. Lambert, Washington, D.C., for Independent Oil & Gas Ass'n of W.Va.

Richard A. Solomon, David D'Alessandro, Washington, D.C., for Public Service Com'n of State of N.Y.

Before GARZA, HIGGINBOTHAM and DAVIS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge.

The petition seeks review of an interlocutory order issued by the Federal Energy Regulatory Commission in the Independent Oil and Gas Association of West Virginia proceedings in FERC Docket Nos. RI74–188 and RI75–21. Because we conclude that the orders of the Commission are not ripe for judicial review, we grant the Commission's motion to dismiss.

I.

The lengthy procedural history of the *IOGA* case is explained in our opinion in *Pennzoil Co. v. FERC*, 645 F.2d 394 (5th Cir.1981). We set out only the history relevant to this appeal. In 1974 IOGA small producers [1] petitioned the Federal Power

---

**1.** A "small producer" is "an independent producer of natural gas ... who is not affiliated with a Class A natural gas pipeline company and whose total 'jurisdictional sales' on a nationwide basis ... were not in excess of 10,000,000 Mcf at

Commission under the Natural Gas Act, 15 U.S.C. § 717 *et seq.* (1982), for permission to charge higher rates in their sales to interstate pipelines. The proceeding was resolved in 1976 with settlement agreements [2] that authorized escalation of rates in certain circumstances. The Natural Gas Policy Act of 1978, 15 U.S.C. § 3301 *et seq.* (1982), generated the question whether the settlement agreements permitted the IOGA producers to charge the maximum lawful prices of the NGPA, and accordingly, one of the interstate pipelines sought its answer from the FPC. The case is currently pending before an administrative law judge.[3]

Petitioner Pennzoil became involved in the current *IOGA* proceedings in 1982 when it purchased West Virginia gas acreage from several small producers. The existing gas sales contracts between these small producers and the pipeline purchaser, Columbia Gas Transmission Corporation, were subject to the terms of the original *IOGA* settlements. Pennzoil and Columbia amended these contracts so that Pennzoil could charge and collect the ceiling prices permitted under the NGPA, but when Pennzoil filed the amended contracts with the Commission, the New York Public Service Commission protested Pennzoil's rate change as inconsistent with the *IOGA* settlement agreements. The Commission determined that the dispute was a matter appropriate for resolution in the ongoing *IOGA* proceeding and referred the case to the presiding ALJ.[4]

Upon transfer of its contracts to the *IOGA* proceeding, Pennzoil filed a Motion for Summary Judgment based on two contentions: (1) that Pennzoil, as a large producer, was not subject to the settlement agreements; and (2) that even if Pennzoil were subject to the settlements, those agreements did not prohibit the amended bilateral contracts with Columbia. Shortly thereafter, Pennzoil requested that the ALJ omit an initial decision and transfer the Motion for Summary Judgment directly to the Commission. The ALJ instead certified the Motion to Omit Initial Decision, and, while that motion was pending before the Commission, denied Pennzoil's Motion for Summary Judgment.

The order which Pennzoil invites us to review was issued by the Commission on January 11, 1984. The order denied the Motion to Omit Initial Decision, and, in effect, denied the underlying Motion for Summary Judgment as well.[5] The Commission ruled that Pennzoil, as purchaser of gas producing properties covered by the *IOGA* proceeding, was subject to the terms of the settlement agreements. The Commission also declined to decide whether the Pennzoil-Columbia contract amendments were consistent with the settlement agreements, finding that that issue raised genuine issues of material fact as to what the parties to the 1976 *IOGA* settlements intended when they entered into those agreements. After the Commission denied Pennzoil's application for rehearing of the order, this appeal was filed.

---

14.73 psia during the preceding calendar year." 18 C.F.R. § 157.40(a)(1) (1983).

**2.** *See* "Order Approving Settlement," *Independent Oil & Gas Association of West Virginia,* 55 FPC 1238 (1976).

**3.** The Commission explains in its brief that the extensive procedural developments in the case, as well as partially fruitful settlement negotiations, have precluded a more timely resolution of the issues.

**4.** *Pennzoil Company,* "Order Affirming Order of Office Director and Denying Appeal Therefrom," Docket Nos. CI82–273–001, *et al.* 24 FERC ¶ 61,170 (July 21, 1983).

**5.** The Commission stated in its order:

Upon review of the motion to omit the initial decision and the underlying motion for summary judgment, ... the Commission concludes that the motion [to omit initial decision] must be denied and the matter left with the presiding judge.... [B]ut our analysis does not end at that point.

*IOGA,* "Order Denying Motion to Omit Initial Decision," p. 4 (Jan. 11, 1984). The Commission then went on to address the merits of the contentions raised by Pennzoil in its Motion for Summary Judgment.

## II.

Our authority to review orders of the Commission derives from Section 19(b) of the NGA, 15 U.S.C. § 717r(b) (1982), as well as Section 506 of the NGPA, 15 U.S.C. § 3416 (1982). Although those statutes do not require it, courts have refused to hear appeals from Commission orders where the orders were not ripe for judicial review. *Placid Oil Co. v. FERC*, 666 F.2d 976, 981 (5th Cir.1982). The policies that inform this rule are those outlined by the Court in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967):

to prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*Id.* at 148, 87 S.Ct. at 1515. Courts have used four criteria to determine whether issues are ripe for judicial review: (1) whether the issues presented are purely legal; (2) whether the challenged agency action constitutes "final agency action" within the meaning of the Administrative Procedure Act; (3) whether the challenged agency action has or will have a direct and immediate impact on the petitioner; and (4) whether the resolution of the issues will foster, rather than impede, effective enforcement and administration by the agency. *Placid Oil Co. v. FERC*, 666 F.2d at 981; *Pennzoil Co. v. FERC*, 645 F.2d at 398.

The first of the two issues Pennzoil submits for our review—whether Pennzoil, as a major producer, is subject to the *IOGA* settlement agreements—is a purely legal issue. The second issue is whether the settlement agreements prohibit Pennzoil's contract amendments with Columbia. According to the Commission, the answer to this question turns on "whether the parties [to the 1976 *IOGA* settlements] intended to allow bilateral amendment to their contracts,"[6] a factual question to be resolved at the hearing before the ALJ. Thus, the Commission argues, the issues presented are not "purely legal." Pennzoil asserts that the Commission mischaracterizes the second issue submitted for review. Pennzoil takes the position that the Commission is obligated to interpret the settlement agreements and orders approving them as a matter of law, and therefore, according to Pennzoil, the second issue is simply whether the Commission can require Pennzoil to participate in the proceeding being conducted by the ALJ.

Even were we to concede that the issues, as characterized by Pennzoil, present purely legal questions, we are not persuaded that review would be appropriate at this time. The Commission has not yet made a final determination on the two issues which are at the heart of the present controversy: whether Pennzoil is subject to the *IOGA* settlement agreements, and, if it is, whether those agreements permit the bilateral contract amendments with Columbia. At this point in the proceeding the Commission has, at most, simply denied Pennzoil's Motion for Summary Judgment. The Commission will have another opportunity to rule on Pennzoil's contentions when it reviews the ALJ's decision at the conclusion of the proceeding before him.[7] Were we to inter-

---

**6.** *IOGA,* "Order Denying Motion to Omit Initial Decision," at 4 (January 11, 1984).

**7.** Although the Commission is currently of the opinion that Pennzoil, as purchaser of gas reserves covered by the *IOGA* settlements, is subject to the terms of those settlement agreements, the Commission may decide otherwise when it reviews the ALJ's decision. Moreover, despite Pennzoil's apparent misgivings, we see no reason why it may not yet convince the Commission, either as a matter of law or by virtue of evidence presented to the ALJ, that the bilateral

contract amendments are not prohibited by the *IOGA* settlement agreements. Contrary to Pennzoil's assertions in its brief, the Commission is not unwilling to listen to Pennzoil's arguments; it remains unconvinced by them. *See IOGA,* "Order Denying Motion to Omit Initial Decision," at 3 (January 11, 1984) ("[T]he Commission has already considered and rejected Pennzoil's argument that it is not bound by the provisions of the settlement. Pennzoil has not offered any authority or cogent reasoning which

vene with judicial review at this stage in the proceeding, we would be "den[ying] the agency an opportunity to correct its own mistakes and to apply its own expertise." *FTC v. Standard Oil Co.*, 449 U.S. 232, 242, 101 S.Ct. 488, 494, 66 L.Ed.2d 416 (1980). Moreover, such piecemeal judicial review before the agency has an opportunity to express its final views would contravene sound policies favoring judicial and administrative economy.

We are also disinclined to review the Commission's order at this point since it has no direct and immediate impact on Pennzoil that cannot be altered by subsequent Commission action and does not present Pennzoil with the threat of irreparable harm. As discussed above, Pennzoil may ultimately establish before the Commission its right to charge and collect NGPA prices. Thus, as in a related attempt by Pennzoil to obtain review of interlocutory orders by the Commission, "the only impact which [Pennzoil] . . . would suffer if [the order] . . . is not now reviewed is delay in final resolution of the . . . proceedings now in progress." *Pennzoil v. FERC*, 645 F.2d at 399. We do not believe that the burden of participating in the proceeding before the ALJ is sufficient to constitute the requisite irreparable harm to Pennzoil.[8] In addition, the Commission has permitted Pennzoil to collect, subject to refund, the monies in dispute pending final Commission decision. Although Pennzoil argues that such funds, since they are subject to refund, are "sterilized" for the purpose of business utilization, more is required for the challenged administrative action to have a sufficiently direct and immediate impact on Pennzoil to warrant judicial review at this point.[9]

Finally, we do not believe that judicial review at this time would foster effective administrative action. Review of Pennzoil's claims at this point might serve to encourage other participants in the *IOGA* proceeding to attempt to bypass the administrative forum presently available for the resolution of the settlement issues. We are also mindful of the Commission's observation that "judicial review at this stage [may] undermine the possibility that the proceeding can be settled either partially or in its entirety [since,] realistically, the producers would not be inclined to settle while Pennzoil's appeal is pending."[10] Pennzoil asserts that the Commission has shown itself incapable of efficient administrative action because of the many procedural delays that have impeded final resolution of the settlement issues. Six years of administrative buck-passing, Pennzoil urges, is enough. While we recognize that the procedural complexities of the case have slowed the administrative process, we note that the procedural orders about which Pennzoil complains here are only months old; unhappily, a mere babe in the life cycle of such cases.

In sum, as we stated in an earlier decision involving Pennzoil, "[w]e can sympathize with the petitioners' desire for rapid resolution of this issue, but in light of the lack of ripeness, . . . judicial review at this time would not be helpful." *Pennzoil v. FERC*, 645 F.2d at 400. Accordingly, we dismiss the petition for review without prejudice.

---

would cause us to reconsider that determination.") (footnote omitted).

**8.** *See FTC v. Standard Oil Co.*, 449 U.S. at 244, 101 S.Ct. at 495 and *Petroleum Exploration, Inc. v. Public Service Commission*, 304 U.S. 209, 222–23, 58 S.Ct. 834, 841–842, 82 L.Ed. 1294 (1938) (expense and disruption of defending oneself in protracted adjudicatory proceedings does not constitute irreparable harm). *See also Colombia Nitrogen Corp. v. FPC*, 559 F.2d 377, 378 (5th Cir.1977) (FPC orders setting out procedural

framework for hearing on gas allocations did not present end user with threat of irreparable harm).

**9.** *See Pennzoil Co. v. FERC*, 645 F.2d at 399–400 and n. 10 (collecting cases in which a sufficiently direct and immediate impact has been found).

**10.** Motion of Federal Energy Regulatory Commission to Dismiss Petition for Review, at 10.