**STATE OF TEXAS, Delbert L. Devin, et al., Petitioners,**

v.

**UNITED STATES DEPARTMENT OF ENERGY, and Donald Paul Hodel, Secretary, United States Department of Energy, Respondent.**

No. 84–4826.

United States Court of Appeals, Fifth Circuit.

June 19, 1985.

---

Renea Hicks, Asst. Atty. Gen., Austin, Tex., for petitioners.

Hector & Associates, Alice G. Hector, Hollis A. Whitson, Albuquerque, N.M., for D. Devin, et al.

Michael A. Bauser, Washington, D.C., for amicus curiae Arizona Nuclear Power.

John A. Bryson, Dept. of Justice, Appellate Sec., Land & Natural Resources Div., Martin W. Matzen, Atty., Washington, D.C., for U.S. Dept. of Energy.

Before REAVLEY, POLITZ and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

On December 19, 1984 the State of Texas and several of its citizens filed petitions in this court challenging certain actions taken by the Secretary of Energy under the Nuclear Waste Policy Act of 1982, 42 U.S.C. § 10101 *et seq.* The petitions sought review of the Secretary's designation of two sites in Texas as potentially acceptable for development as nuclear waste repositories under the NWPA. The Secretary asks us to dismiss the petition, contending that the challenged actions are neither final under the Act nor ripe for review. We agree with the Secretary and grant the motion to dismiss.

I

The Nuclear Waste Policy Act is designed to achieve a permanent and workable solution to the mounting problem of disposal of high-level radioactive wastes in the United States. The Act establishes an ongoing process by which the Secretary of Energy, acting within carefully defined time frames, is to select a number of sites potentially suitable for development as nuclear waste disposal facilities, and after a winnowing process in which the sites are evaluated not only by the Secretary, but also by the President, Congress, and the affected states, is to develop one of the sites into an operational waste repository by the year 1998. We will not here attempt a comprehensive explication of the NWPA's statutory scheme, but a brief description of the site selection process is necessary to put in context the actions challenged by Texas.

–1–

The NWPA, effective as of January 7, 1983, requires the Secretary to identify states containing "potentially acceptable sites"[1] for the first repository within 90 days of that date. § 116(a), 42 U.S.C. § 10136(a). Within 90 days of identification, the Secretary must notify the governors and legislatures of such states of the location of such potentially acceptable sites. *Ibid.* During this same 180 day period, the Secretary is to promulgate general guidelines for the recommendation of sites for repositories. These guidelines are to address specific considerations that Congress deemed pertinent to the site selection process, as well as those the Secretary finds appropriate. § 112(a), 42 U.S.C. § 10132(a).

Once the guidelines are promulgated, the Secretary is to use them to determine which of the sites designated by him are suitable for "site characterization"—i.e. further intensive testing—and he is to nominate five sites as suitable for site characterization.[2] § 112(b)(1)(A), 42 U.S.C. § 10132(b)(1)(A). This nomination must be preceded by public comment and hearings, § 112(b)(2), 42 U.S.C. § 10132(b)(2), and must be accompanied by an "environmental assessment." § 112(b)(1)(E), 42 U.S.C. § 10132(b)(1)(E). This environmental assessment is a comprehensive document that discusses the suitability of the nominated site for characterization and development as a repository and compares its suitability with the other four nominated sites. The environmental assessments are expressly labelled by the statute as "final agency action" and are subject to judicial review. *See* §§ 112(b)(1)(F)(i), 119(a)(1)(E), 42 U.S.C. §§ 10132(b)(1)(F)(i), 10139(a)(1)(E).

From these five nominated sites the Secretary is to recommend three sites to the President for site characterization, and the President must review and approve this recommendation. § 112(c), 42 U.S.C. § 10132(c). Following site characterization, the President is to recommend one of the three sites to Congress for develop-

---

1. The term "potentially acceptable site" means any site at which, after geologic studies and field mapping but before detailed geologic data gathering, the Department undertakes preliminary drilling and geophysical testing for the definition of site location. § 116(a), 42 U.S.C. § 10136(a).

2. Site characterization is an involved process that involves not only the sinking of shafts at the candidate sites, but also on-site testing with radioactive material. *See* § 113, 42 U.S.C. § 10133.

ment as the first repository, § 114, 42 U.S.C. § 10134. An affected state or Indian tribe may submit to Congress a notice of disapproval of the President's recommendation, *see* §§ 116(b)(2), 118(a), 42 U.S.C. §§ 10136(b)(2), 10138(a), and this veto prohibits the President's recommendation from becoming effective unless both houses of Congress override it by passing a resolution of repository siting approval within 90 days. § 115(c), 42 U.S.C. § 10135(c).

–2–

The action challenged here occurred at the very first stage of the Secretary's site selection process under the NWPA—his identification of "potentially acceptable sites" for the first repository. The short time period Congress allotted the Secretary for this step—a maximum of 180 days—was no accident. This brief period reflected the fact that prior to passage of the NWPA, DOE had already identified seven potentially acceptable sites in states other than Texas, and, in Texas, had substantially completed identification of two sites. This site screening work had been under way for a number of years prior to passage of the NWPA, and the Act used that work as a springboard into the site nomination process.

Because the sites in states other than Texas had already been identified, the Secretary was able to issue on time the notifications to those states required by section 116. The screening process for the Texas sites was not yet complete when the 180 day period expired, however; thus, the notification given to Texas in February 1983 was that there were "two locations" in the Palo Duro Basin of the Texas Panhandle that the Secretary believed contained "one or more potentially acceptable sites." The areas of the Panhandle that were being evaluated covered hundreds of square miles and could not readily be compared to the potential sites identified in other states, which were each roughly ten square miles in area. Such comparisons were to be determinative of the Secretary's decision on which potentially acceptable sites to nomi-

nate under section 112 as suitable for site characterization; accordingly, the Secretary continued screening the potential sites in Texas.

By February 1984 the Secretary had tentatively identified two nine square-mile sites in the Palo Duro Basin, and published his conclusions in the form of a draft report in March 1984. Texas and some of the individual petitioners commented on this draft, with the result that the Secretary shifted the location of the sites by about two miles in each case. In November 1984 the Secretary issued a report entitled *Identification of Sites Within the Palo Duro Basin* that notified Texas of the finalized location of the potentially acceptable sites in the Panhandle. It is this action—the Secretary's completion of the site screening process in Texas—that the State invites us to review.

II

Texas contends that section 119(a)(1)(A) of the NWPA, 42 U.S.C. § 10139(a)(1)(A), which gives the courts of appeal jurisdiction to review "any final decision or action of the Secretary," provides a basis for the review it seeks. The State points out that the Secretary's site screening process in Texas is complete—i.e. he has chosen two nine mile sites in Texas as potentially acceptable for repositories under the NWPA from among the hundreds of square miles in the Panhandle previously under his consideration. Therefore, the State argues, this action is reviewable under the plain terms of section 119(a)(1)(A).

The Secretary agrees that the two areas designated in his November 1984 report are the only Texas sites that will possibly be nominated by him for the first repository; indeed he acknowledges that the screening of the large areas first identified in Texas, so as to narrow the location of potential sites to a size comparable to sites in other states, was necessary if any sites in Texas were to be nominated as suitable for site characterization under section 112(b)(1)(A). But the Secretary vigorously disputes Texas' conclusion that his actions are "final"

within the meaning of section 119(a)(1)(A). He explains that his selection of these two particular sites from among others in the Panhandle as acceptable for further evaluation is only a preliminary but necessary step in the nomination process. Until he makes his *nominations* under section 112, the Secretary argues, the suitability of potential sites is a matter for his discretion. Once nomination occurs and environmental assessments are prepared for the selected sites, judicial review, as well as other public and governmental scrutiny of the siting decisions, is expressly provided for by the NWPA. This statutory scheme, the Secretary contends, demonstrates that the preliminary siting choices challenged here should not be considered "final" for purposes of judicial review under section 119(a)(1).

■ We think the Secretary's point is well taken. Courts interpret "finality," as that concept is used in the Administrative Procedure Act, in a "pragmatic way," *Pennzoil Co. v. FERC*, 645 F.2d 394, 399 (5th Cir.1981), and that approach is appropriate here as well. Despite the seeming "finality" of the Secretary's decision to narrow the proposed repository sites in Texas to two areas of a size suitable for site characterization, when viewed in the context of the statutory scheme of the NWPA, the action is not final for purposes of our review.

–1–

■ As the Secretary explains in his motion to dismiss:

Section 112 was carefully designed by Congress to lead to the Secretary's nomination of five sites suitable for site characterization, and the subsequent recommendation to the President of three sites for actual characterization as candidate sites. Congress determined the level of environmental review necessary at these stages by providing that "[e]ach nomination of a site under this subsection shall be accompanied by an environmental assessment," 42 U.S.C. 10132(b)(1)(E), and then providing that the environmental as-

sessments would be "final agency action" subject to judicial review within the meaning of Section 119 and the APA. 42 U.S.C. 10132(b)(1)(F).

The Secretary contends that implicit in Congress' provision for such review is a determination that activities leading up to that point are neither final nor reviewable. While we are aware that a statute's express provision for review of certain agency actions does not necessarily negate the availability of review for other acts, *see Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967), the provision for review of environmental assessments does give us pause.

■ If the merits of the Secretary's decision on the Texas sites will be comprehensively evaluated in the environmental assessments should he determine that either or both sites are suitable for site characterization and nominate them under section 112(b)(1), and if the environmental assessments are themselves subject to judicial review, we see little point in reviewing his preliminary siting decisions now. The time frame within which these decisions are being made highlights our concern: the Secretary is presently trying to determine which of the sites that have been screened in a number of states are suitable for nomination under section 112(b)(1). Should he decide not to nominate either Texas site our review would have served little purpose, and if either is nominated, review will swiftly follow. We limit judicial review to "final" actions in an effort to avoid needless interruption of the administrative process. Were we to interpret "finality" here so generously as Texas suggests, the only certain result would be a waste of both judicial resources and the time of all concerned. Surely such was not the intent of Congress in section 119(a)(1)(A).

–2–

Texas argues, however, that delay of review is not all that it seeks to avoid by petitioning at this juncture. At least part of the review it seeks here, the State suggests, would not be possible upon later

review of the environmental assessments. Specifically, Texas contends that the Secretary should have screened the Texas sites under the guidelines he was required to promulgate under section 112(a) of the NWPA, and that because the issuance of those guidelines did not precede the screening process in Texas, the Secretary's selections cannot stand. This procedural attack on the Secretary's screening process cannot be made upon review of the environmental assessments,[3] and if we deny review now, Texas argues, the point will be irretrievably lost.

█ We are not persuaded. The guidelines that Texas contends restricted the Secretary's choices in site screening for the first repository simply have no application to that process. None of the sites selected in other states were chosen against the backdrop of such guidelines, and the happenstance that site selections in Texas were not complete when the NWPA took effect does not entitle Texas to different treatment. Indeed the short time limits imposed on the Secretary for notifying states with potentially acceptable sites and for identifying sites within the states suggest that this process was one subject to the agency's broad discretion. As described above, the deadlines for promulgating the section 112(a) guidelines and the deadline for making the section 116(a) site notifications were one and the same; with the time frame so arranged, it is difficult to imagine that Congress intended these guidelines to govern the initial site screening process. That the Secretary was unable to meet either deadline does not alter the degree of discretion given him for this particular decision.[4] Since the section 112(a) guidelines were inapplicable to the decision that Texas challenges here, even if we decline the State's invitation for review

now, we will not preclude any attack on the Secretary's decision that will not be available upon later review.

## III

Even assuming that the Secretary's preliminary siting decisions challenged here are "final" within the meaning of section 119(a)(1)(A), that action is nevertheless not "ripe" for our review. We have long imposed a ripeness requirement even where the statute authorizing our review did not do so, *see, e.g., Pennzoil Co. v. FERC*, 742 F.2d 242, 244 (5th Cir.1984), and such a requirement is appropriate here.

█ The doctrine of ripeness, first announced by the Court's decision in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), requires us to evaluate both "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 149, 87 S.Ct. at 1515. Four factors are relevant: (1) whether the issues presented are purely legal; (2) whether the challenged agency action constitutes "final agency action" within the meaning of the APA; (3) whether the challenged action has or will have a direct and immediate impact on the petitioner; and (4) whether resolution of the issues will foster, rather than impede, effective enforcement and administration by the agency. *Id.* at 149–54, 87 S.Ct. at 1515–18; *Pennzoil*, 742 F.2d at 244. Assuming for the sake of argument that the challenged action is "final," none of the other criteria necessary for ripeness are met here.

–1–

█ First, the issues before us are not purely legal. Texas suggests that this requirement is met because the factual

---

**3.** Section 112(b)(1)(F) limits judicial review of the environmental assessments to the factors enumerated in § 112(b)(1)(E)(i)–(vi). Although these factors permit review of the environmental assessment on all pertinent issues, the procedural formalities which attend the preliminary site screening process are not among them.

**4.** The Secretary does not dispute that he issued neither the § 112(a) guidelines nor his final decision on the Texas sites within 180 days of January 7, 1983. As explained above, however, the Secretary did notify Texas within this time limit that there were one or more potentially acceptable sites within the large area of the Panhandle he was then evaluating.

record supporting the Secretary's action is complete, *see, e.g., Mississippi Valley Gas Co. v. FERC,* 659 F.2d 488, 498 (5th Cir. 1981), but we think that this factor entails something more. It expresses the reviewing court's need for a completed and specific framework within which the agency's decision can properly be evaluated, and such a framework is absent here. Otherwise stated, judicial review of the Secretary's site screening process will be more meaningful if we require Texas to wait until environmental assessments are prepared. Such documents and the framework they provide for our review, *see* § 112(b)(1)(E), 42 U.S.C. § 10132(b)(1)(E); *supra* n. 3, make our task more manageable and permit both us and the parties to focus on the concerns in repository site selection that Congress deemed important. Were we to attempt to review the Secretary's decision at this point, we would have little or no source of guidance for our decision. We eschew such judicial dead-reckoning where we can avoid it.

–2–

Nor do we think the Secretary's decision here has the requisite direct and immediate impact on the petitioners. Texas and its interested citizens can attack the Secretary's decision *now* by bringing complaints directly to him through the public hearing process of section 112(b)(2).[5] That section requires the Secretary to hold public hearings in the vicinity of any site that is subject to nomination under section 112(b)(1)(A), so that the public may voice

their concerns about the choice. If the chosen sites are in fact unsuitable for characterization and ultimate development as repositories, Texas and the affected citizens may yet convince the Secretary that this is so before he decides which sites to nominate. At the least, the public can use the hearings to apprise him of particular issues they wish to see addressed in the environmental assessments if the proposed sites are nominated.[6] The hardship that participation in this ongoing process may impose on Texas and its citizens is not sufficient to meet the requirement that they sustain a "direct and immediate impact" from the Secretary's action. *See F.T.C. v. Standard Oil Co.,* 449 U.S. 232, 244, 101 S.Ct. 488, 495, 66 L.Ed.2d 416 (1980).[7]

–3–

Moreover, judicial review at this juncture would likely interfere with the administrative process underway with respect to the Texas sites at issue. If we allow Texas to bring its case before us now, we encourage it to forego its opportunities before the Secretary described above. If we deny the review requested here as premature, however, we further Congress' intent that the public hearing and comment forum, rather than the courts, be the focus of review at this point in the site selection process.

Relatedly, the environmental assessment process is not the only means of review of the Secretary's siting decisions. The statute contemplates repeated review of the Secretary's action by the President, *see*

**5.** Section 112(b)(2) provides:

Before nominating any site the Secretary shall hold public hearings in the vicinity of such site to inform the residents of the area in which such site is located of the proposed nomination of such site and to receive their comments. At such hearings, the Secretary shall also solicit and receive any recommendations of such residents with respect to issues that should be addressed in the environmental assessment described in paragraph (1) and the site characterization plan described in section 10133(b)(1) of this title.

**6.** Should the Secretary nominate either site and fail to address the concerns raised in the hear-

ings, his environmental assessment may be attacked as deficient on that ground when it is reviewed under section 119(a)(1)(E).

**7.** The private petitioners also complain that they are suffering from the effect of the Secretary's decision *now* because, for example, land values in the designated areas have fallen due to their designation by the Secretary as "potentially acceptable sites" for the first repository. This circumstance, however, may be only temporary, because the Secretary has not yet decided which sites to *nominate* under section 112. Only after nomination will the effects of the Secretary's decision be permanent, and at that point the NWPA expressly authorizes our review.

§ 112(c), 42 U.S.C. § 10132(c), the Congress, *see* §§ 114(a)(2)(A), 115, 42 U.S.C. §§ 10134(a)(2)(A), 10135 and the states, *see* § 116(b), 42 U.S.C. § 10136(b). We recognize that this step by step review process of the NWPA is intentionally repetitive and designed to assure that no site be chosen that is not safe for use as a repository, but in the face of so many planned opportunities for review, we are reluctant to imply more from the general language of section 119(a)(1)(A). The review procedures expressly provided were carefully planned with the statutory time frame in mind so that the ultimate goal of the NWPA, a working repository by the year 1998, could be achieved. Unnecessary judicial review will undoubtedly impede the Secretary's ability to meet that goal.

### IV

In sum, we conclude that the Secretary's preliminary siting decisions challenged here by Texas and the private petitioners are not "final actions" which are ripe for our review. When considered in the context of the statutory scheme of the NWPA, these decisions are but a preliminary step to actions that will later be reviewable by this court. Review at this point would entail a waste of judicial and administrative resources, would be difficult to conduct in any event for lack of a meaningful framework within which such review may go forward, and would detract from the public review process currently in progress. All these considerations suggest that the Secretary's siting decisions challenged here are neither "final" nor "ripe" for judicial review. Accordingly, we grant the Secretary's motion to dismiss.