**AMERICAN LAND TITLE ASSOCIATION, et al.**

v.

**Robert L. CLARKE, et al.**

**Civ. No. A–87–CA–408.**

United States District Court,
W.D. Texas,
Austin Division.

Aug. 25, 1989.

Thomas W. Reavley, Scott, Douglass & Luton, Austin, Tex., William T. Finley, Jr., Sheldon E. Hochberg, David F.B. Smith, Jeffrey R. Babbin, Pierson, Semmes, and Finley, Washington, D.C., for plaintiffs.

Katherine L. Smith, Asst. U.S. Atty., Austin, Tex., Theodore C. Hirt, James A. Gardner, Neil H. Koslowe, Dept. of Justice, Civ. Div., Washington, D.C., for defendants.

## ORDER

NOWLIN, District Judge.

Before the Court is Defendants' Motion to Dismiss, as well as Plaintiffs' and Defendants' responsive pleadings. The Court has considered the arguments of the parties, and is of the following opinion.

Plaintiffs, American Land Title Association and Texas Land Title Association, are trade associations of the land title industry. They have sued Robert L. Clarke, the Comptroller of the Currency ("the Comptroller"), the Office of the Comptroller of the Currency ("the OCC"), and the United States of America under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 703, 704, and 706(2). Plaintiffs complain of two interpretative letters issued by the Office of the Comptroller: OCC Staff Interpretive Letter No. 368, dated July 11, 1986, and signed by Assistant Director of the Legal Advisory Services Division William B. Glidden ("Letter 368"), and OCC Staff Interpretive Letter No. 377, dated February 6, 1987, and signed by Chief Counsel of the OCC Richard V. Fitzgerald ("Letter 377"). In essence, Plaintiffs seek a declaratory judgment that Letters 368 and 377 are null and void because they were issued in excess of statutory authority and without observance of procedure required by law, and otherwise are arbitrary and capricious.

Defendants move to dismiss the action under Federal Rules of Civil Procedure 12(b)(1) and (6) for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Defendants argue that the complaint must be dismissed because the Interpretive Letters are not subject to judicial review. Specifically, Defendants argue first that judicial review at this time is improper because Letters 368 and 377 are not "final agency action" under 5 U.S.C. § 704, and secondly, because the issues raised by Plaintiffs are not "ripe" for judicial review under the doctrine announced in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), and applied by the Fifth Circuit in *State of Texas v. United States Department of Energy*, 764 F.2d 278 (5th Cir.1985), *cert. denied* 474 U.S. 1008, 106 S.Ct. 531, 88 L.Ed.2d 463 (1985). The Court is of the opinion that there has been no final agency action and that the issues presented are not "ripe" for review and, therefore, grants the Motion to Dismiss.

## I. FINAL AGENCY ACTION

■ Section 704 of the Administrative Procedure Act only authorizes judicial review of, "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Plaintiffs do not contend that the Interpretive Letters are made reviewable by statute, so the Court's inquiry must turn to whether they constitute "final agency action."

In determining whether an administrative action is subject to judicial review, the Court must examine the finality element in a pragmatic way. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967). In *Abbott*, the Court found four factors to be significant in its holding that certain regulations of the Food and Drug Administration con-

stituted final agency action.[1]

The factors relied upon in *Abbott* were: (1) the challenged regulations were "definitive" statements of the FDA's position as opposed to an informal statement, the ruling of a subordinate official, or a tentative statement, *id.* at 151, 87 S.Ct. at 1516–17; (2) the challenged regulations had the status of law with penalties for noncompliance, *Id.* at 151–52, 87 S.Ct. at 1516–17; (3) the impact of the regulations on the petitioner was "direct and immediate," having a direct effect on the day-to-day business of the regulated industry, *id.* at 152, 87 S.Ct. at 1517; and (4) immediate compliance was expected, placing the petitioner in the position of having to make what has now come to be known as a "Hobson's Choice" between costly compliance and the risk of penalties for noncompliance. *Id.* at 152–53, 87 S.Ct. at 1517–18; *see also New York Stock Exchange v. Bloom,* 562 F.2d 736, 741 (D.C.Cir.1977), *cert. denied* 435 U.S. 942, 98 S.Ct. 1520, 55 L.Ed.2d 538 (1978) (referring to this choice as a "Hobson's Choice").

By way of contrast, the Supreme Court in *Federal Trade Commission v. Standard Oil of California,* 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980), applying the same four factors, held that a complaint issued by the F.T.C. based on its alleged "reason to believe" that a violation had occurred, was unreviewable because it was not a final agency action. The Court stated that the FTC's "reason to believe" a violation had occurred was not a definitive statement of its position, but merely a "threshold determination" that future inquiry was warranted. The complaint also did not have the force of law as did the comparable FDA regulations in *Abbott.* The Court also noted that judicial review of the FDA regulations in *Abbott* would speed enforcement of the regulatory scheme whereas judicial review of the FTC's complaint in *Standard Oil* would likely cause interference with the proper functioning of the agency and increase the burden of the courts.

These two cases provide contrasting fact patterns which are instructive in determining when a final agency action occurs. Applying these cases by comparison, the Ninth Circuit in *Air California v. United States Transportation,* 654 F.2d 616 (9th Cir.1981) held that an interpretive letter sent by chief counsel of the Federal Aviation Administration ("FAA") to the Orange County Board of Supervisors was not "final agency action" because it was not a definitive statement of the agency's position and it did not have the status of law. *Id.* at 621.

In *Air California,* the Orange County Board of Supervisors (the "Board") adopted a formal policy to freeze increases in airport operations in order to prevent an increase in noise levels. This policy ultimately resulted in the exclusion of new air carriers from the airport. The Western Regional Counsel of the FAA issued a report concluding that continued denial of access to new carriers would constitute a violation of federal statutes. Based on this report, the FAA's Chief Counsel sent a letter to the Board advising it of the conclusions reached in the report and warning that failure to "accommodate" new carriers would result in civil penalties. The Board subsequently met and agreed to prepare an interim plan which would reduce the number of authorized flights of Air California and reallocate them to new carriers. Air California filed suit challenging the Chief Counsel's letter contending that it erroneously interpreted the applicable law.

The Ninth Circuit dismissed the case for lack of jurisdiction because the letter did not constitute final agency action, and for lack of ripeness. *Id.* at 619–20. Applying the four factors set forth in *Abbott* and *Standard Oil,* the Ninth Circuit found that the letter was neither a definitive statement of the agency's position, nor a document with the status of law as it did not initiate any agency process and it did not require that any specific action be taken by the Board. Moreover, the Court stated that "administrative orders are not review-

---

**1.** These four factors are not required elements that must be found in every case in order for there to be finality, but rather are factors relevant to the Court's pragmatic analysis.

able 'unless and until they impose an obligation, deny a right, or fix some legal relationship as a consummation of the administrative process.'" *Id.* at 621 (citations omitted). The Court found it significant that "[t]he letter did not specify the exact form that compliance would take, but rather commented, briefly and tentatively, upon alternatives suggested in the investigative report and offered aid in the Board's attempt to comply." *Id.* at 620. In sum, the Court found that the letter more closely resembled the FTC's complaint averring a threshold "reason to believe" in *Standard Oil,* than the immediately enforceable regulations issued by the FDA in *Abbott.*

It is the Court's opinion that Letters No. 368 and 377 more closely resemble the FTC's threshold complaint than the FDA's immediately enforceable regulations. The Letters do not represent a definitive statement of the OCC's position as they were written by subordinate officials in response to hypothetical questions, and do not have the status of law as they do not "impose an obligation, deny a right, or fix some legal relationship as a consummation of the administrative process." *Air California,* 654 F.2d at 621.

In *National Automatic Laundry and Cleaning Council v. Shultz,* 443 F.2d 689 (D.C.Cir.1971), the D.C. Circuit elaborated on the benefits of allowing agencies to answer hypothetical questions without the interference of judicial review. The Court stated:

A businessman unable to obtain a final, authoritative ruling on the matter at hand is nevertheless interested in an 'advisory' indication, perhaps from a subordinate official, which can serve the purpose of providing an informed though not binding prediction. There are sound reasons why such advisory letters and opinions should not be subject to judicial review. This technique of apprising persons informally as to their rights and liabilities has been termed an 'excellent practice in administrative procedure.' * * * Advisory opinions should, to the greatest extent possible, be available to the public as a matter of routine; it would be unfortunate if the prospect of judicial review were to make an agency reluctant to give them.

*Id.* at 699. The Court agrees with the D.C. Circuit's assessment of the value of advisory letters written by subordinate officials and does not wish to discourage or disrupt this practice.

Plaintiffs rely on *Shultz* for the proposition that the Court should not focus on the form of the agency action, but on the deliberativeness of the agency's action. In *Shultz,* a letter was written by the head of the Wage and Hour Division of the Department of Labor in response to an inquiry by a trade association as to whether its members' actual and present operation had become illegal by virtue of several amendments to the Fair Labor Standards Act. The Court held that the letter was a "final agency action" based on the fact that the question to which the letter responded concerned a present and actual controversy and based on the deliberativeness of the agency's position as announced by the head of the agency. In contrast, the challenged Letters in this case were written both in response to hypothetical questions, and by subordinate officials.

Plaintiffs argue that it is irrelevant that the challenged Letters were written by subordinate officials because the Letters represent the final position of the OCC on the issues they address and are the culmination of years of well-considered agency decisionmaking. In support of this view, Plaintiffs refer to various speeches made by high-ranking officials of the OCC referring to the Letters as "rulings" of the OCC.

The question before the Court, however, is not whether the Letters constitute "rulings," but whether they constitute "final agency action." Section 551(13) of the APA clearly states that "agency action includes the whole or part of an agency rule." Section 551(4) defines "rule" as "the whole or a part of an agency statement ... designed to implement, interpret, or prescribe law or policy...." 5 U.S.C. 551(4), (13). It is clear that the Interpretive Letters constitute "rules" and, thus,

"agency action." The issue before the Court, however, is whether the Letters constitute *"final* agency action." Speeches alone cannot place a stamp of finality on the challenged Letters.

Plaintiffs also argue, however, that the position taken in Letter No. 368 was made final by a letter (not challenged in this action) written by the Comptroller on August 6, 1986, specifically approving of the position taken in the Letter. In *National Automatic Laundry and Cleaning Council v. Shultz*, 443 F.2d 689 (D.C.Cir.1971), the D.C. Circuit stated: "We think the sound course is to accept the ruling of a board or commission, or the head of an agency, as presumptively final." *Id.* at 701. As previously mentioned, the *Shultz* Court held that a letter written by the head of the Wage and Hour Division of the Department of Labor constituted "final agency action."

In reaching this conclusion, however, the Court stated:

> Even the head of an agency, it may be contended operates on more than one level of deliberativeness. And it may be urged that a ruling made without that kind of assurance of deliberativeness that is presented by a hearing, or a structured controversy, may be the kind of ruling that is more freely subject to reconsideration. Certainly we know that the head of an agency may make tentative rulings and may reconsider rulings previously made.

*Id.* at 701.

The question, then, is whether the August 6, 1986 letter intended to make final the position taken by Letter No. 368, or whether it was intended as a tentative statement of the OCC's position. Three factors weigh against a finding that the August 6, 1986 letter intended to make final the position taken by Letter No. 368: first, the Comptroller's letter never specifically refers to Letter No. 368; second, even if it can be inferred that the Comptroller was referring to Letter No. 368, it cannot be overlooked that Letter No. 368 was written in response to a hypothetical question; and third, in a subsequent letter written by the Chief Counsel of the OCC, the OCC has stated its willingness to reconsider the matters addressed in Letter No. 368. These factors will be discussed below.

First, keeping in mind the statement in *Shultz* that even the head of an agency operates on more than one level of deliberativeness, the Court finds that the Comptroller's August 6, 1986 letter does not contain the necessary assurances of deliberativeness in that it never specifically refers to Letter No. 368, and does not itself set forth the legal analysis and interpretations of law set forth in Letter No. 368.

Second, even if it can be inferred that the Comptroller's letter was referring to Letter No. 368, the hypothetical nature of the question to which Letter No. 368 responded weighs against a finding of finality in this case. Neither the Comptroller's letter, nor Letter No. 368 were written in response to questions concerning present and actual operations of the regulated industry, as was the letter written by the head of the agency in *Shultz*. The *Shultz* Court, relying on its previous analysis in *Helco Products Co. v. McNutt*, 137 F.2d 681 (D.C.Cir.1943), specifically recognized that, "a ruling on a hypothetical question might be subject to reconsideration when an actual problem materialized." *Shultz*, 443 F.2d at 699. The fact that the challenged letter in *Shultz* was written in response to a question regarding the actual and present operations of the inquiring party was a significant factor in the Court's finding of finality. *Shultz*, 443 F.2d at 669. That fact is not present in this case.

Third, the OCC has stated its willingness to reconsider the positions taken in Letters No. 368 and 377 in a letter written on June 23, 1987 by the OCC's Chief Counsel. Defendants have submitted a copy of the Chief Counsel's June 23, 1987 letter, which states:

> While we believe the analysis presented in the letters is clear and correct, there may be other factors or arguments of which we are not aware. If our interpretation of the Act is weak in some regard, we clearly would wish to have that

brought to our attention and revisit the question.

Considering the lack of an actual and present structured controversy assuring the kind of deliberativeness that was found present in *Shultz*, and considering the expressed willingness of the OCC to reconsider its position, this Court is of the opinion that neither the challenged Letters nor the Comptroller's August 6, 1986 letter are final definitive statements of the agency's position. The Court, thus, holds that there has been no "final agency action" in this case.

## II. RIPENESS

■ Defendants also argue that this case is not "ripe" for judicial review. The doctrine of ripeness requires the court to evaluate both "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. at 149, 87 S.Ct. at 1515; *see also State of Texas v. U.S. Dep't of Energy*, 764 F.2d 278, 283 (5th Cir.1985), *cert. denied*, 474 U.S. 1008, 106 S.Ct. 531, 88 L.Ed.2d 463 (1985). Four factors are relevant to this evaluation: "(1) whether the issues presented are purely legal; (2) whether the challenged agency action constitutes "final agency action" within the meaning of the APA; (3) whether the challenged action has or will have a direct and immediate impact on the petitioner; and (4) whether resolution of the issues will foster rather than impede, effective enforcement and administration by the agency." *State of Texas v. U.S. Dep't of Energy*, 764 F.2d 278, 283 (5th Cir.1985), *cert. denied*, 474 U.S. 1008, 106 S.Ct. 531, 88 L.Ed.2d 463 (1985) (citing *Abbott Laboratories v. Gardner*, 387 U.S. at 149–54, 87 S.Ct. at 1515–18).

The Court has already determined that there has been no final agency action in this case. The Court will, thus, turn its attention to the other three factors relevant to the ripeness issue.

### A. *Further Administrative Proceedings Are Contemplated*

The parties have spent a considerable amount of time attempting to convince the Court of what the underlying issue is, and of whether or not it is a purely legal one. As seen from the memorandum in support of their summary judgment motion, and from their response to Defendants' Motion to Dismiss, Plaintiffs construe the underlying issue to be whether the OCC exceeded its rulemaking authority by determining that 12 U.S.C. § 92 allows national banks to engage in activities not expressly authorized by that section. As seen from Plaintiffs' Original Complaint, however, it appears that Plaintiffs originally construed the underlying issue to be whether the OCC exceeded its statutory authority by issuing interpretive Letters No. 368 and 377 without providing prior notice and an opportunity for the public to comment under 5 U.S.C. § 553. The Court's first comment is that these are two separate issues. The former issue deals with whether the OCC violated its substantive rulemaking authority. The latter deals with whether the OCC violated its procedural rulemaking authority. Plaintiffs argue that the former issue is purely legal and would no doubt argue that the latter issue is purely legal, and that, therefore, the case is ripe for review.

As seen from Defendants' Motion to Dismiss, Defendants construe the underlying issue to be whether national banks may engage in the title insurance business through operating subsidiaries. Defendants argue that this issue involves some legal and some factual questions that require further review by the OCC under 12 CFR § 5.34(d)(1)(i), (ii), before the case will be ripe for judicial review.

In *Abbott*, however, the question of whether the underlying issue was purely legal was relevant to the ripeness issue only insofar as the Court had to determine whether any further administrative proceedings were contemplated. *Abbott*, 387 U.S. at 149, 87 S.Ct. at 1515–16. Thus, while questions of whether the OCC exceeded its statutory authority may be purely legal, and the question of whether national banks are authorized to engage in title insurance activities through operating

subsidiaries may involve some factual issues, necessitating further review by the OCC, the true question before the Court in determining the "ripeness" issue is whether the OCC contemplated further administrative proceedings when it issued the Interpretive Letters.

The Court has already found that further administrative review of the issues addressed in the Letters is likely to occur when an actual and present case arises and the Comptroller himself is compelled to issue a final ruling on the matter. The Court, thus, finds that although there are some issues in this case which are purely legal and some which are factual, further administrative proceedings on the issues addressed in Letters No. 368 and 377 are both contemplated and likely to occur when a present and actual controversy comes before the OCC.

### B. *Hardship of Withholding Review*

The third part of the *Abbott* ripeness test requires the court to evaluate whether postponing review of the interpretive Letters until the question arises in some more concrete form is outweighed by the hardship to the parties of withholding review. *Abbott,* 387 U.S. at 148–50, 87 S.Ct. at 1515–16; *New York Stock Exchange v. Bloom,* 562 F.2d 736, 740–41 (D.C.Cir.1977).

Plaintiffs' first argue that their assertion that the OCC has exceeded its statutory authority satisfies the hardship requirement of the ripeness doctrine. The Court agrees that hardship may be shown were the challenging party alleges that the agency acted in violation of a specific limitation on its powers. *Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958); *Central Hudson Gas v. EPA,* 587 F.2d 549, 559 (2nd Cir.1978); *Coca–Cola v. FTC,* 475 F.2d 299, 303 (5th Cir.1973), *cert. denied* 414 U.S. 877, 94 S.Ct. 121, 38 L.Ed.2d 122 (1973). However, the cases cited by Plaintiffs are not applicable to this case.

For example, Plaintiffs do not allege that the OCC violated a clear statutory limit on its procedural authority to act as was the case in *Leedom.* Instead, as seen from the totality of Plaintiff's pleadings, Plaintiffs challenge the substance of the interpretive rulings of the OCC. Stripped to its barest elements, Plaintiff's argument is that the OCC exceeded its statutory authority by allowing national banks to engage in activities not expressly authorized by Section 92. This argument requires a primary determination that Section 92 does not allow national banks to engage in the activities authorized by the interpretive Letters. Plaintiffs' challenge as seen from the totality of the pleadings, thus, is based primarily on the assertion that Section 92 prohibits national banks from engaging in title insurance activities in communities with populations exceeding 5000. This assertion goes to the substance of the interpretive Letters and does not present the Court with a situation where a clear statutory mandate prohibits the OCC from issuing the interpretive Letters.

The one statutory limitation on the OCC's authority to issue rulings is found in 5 U.S.C. § 553, requiring the OCC to give public notice and an opportunity for comments on proposed rules. There is a clear exception to this rule, however, for interpretive rules. The Administrative Procedure Act, 5 U.S.C. § 553(b)(3)(A), provides:

> Except when notice or hearing is provided by statute, this subsection does not apply—to interpretive rules, ...

The OCC's interpretive Letters, as "interpretive rules", fall within the exception to the one procedural limit on its authority to issue rules.

Therefore, there was no clear statutory limit on the OCC's authority to issue the interpretive Letters, and no hardship is shown here by Plaintiffs' allegation that the OCC exceeded its statutory authority.

Plaintiffs also argue that the OCC's Interpretive Letters will have a direct and immediate impact on them, and that withholding judicial review will subject Plaintiffs to substantial hardship. The Court is of the opinion that the interpretive Letter may cause some competitive injury to Plaintiffs, *see e.g., Independent Banker's Ass'n. v. Smith,* 534 F.2d 921 (D.C.Cir. 1977), *cert. denied* 429 U.S. 862, 97 S.Ct. 166, 50 L.Ed.2d 141 (1977), but is also of

the opinion that "the interests of the court and agency in postponing review until the question arises in some more concrete and final form" outweigh the hardship to the parties of withholding judicial review. *See e.g., Bloom,* 562 F.2d at 741. As previously stated, the Court does not wish to disrupt or discourage the practice of issuing interpretive rulings, which are an efficient means of informing businessmen and companies informally of their prospective rights and liabilities. When the controversy arises in some more concrete form, Plaintiffs may obtain judicial relief by suing directly any national bank who causes them economic injury by engaging in title insurance activities. *Id.* at 742. Moreover, the Court does not consider the possibility of having to initiate more than one suit to be a sufficient hardship to justify review in this case. *Id.*

### C. *Effective Enforcement and Administration by the Agency*

The fourth part of the *Abbott* ripeness test requires the Court to determine whether resolution of the issues will foster rather than impede effective enforcement and administration by the agency. *Abbott,* 387 U.S. at 149–54, 87 S.Ct. at 1515–18. Plaintiffs have failed to show how judicial review would foster rather than impede effective enforcement and administration by the agency.

The Court is of the opinion that judicial review at this time would rob the Comptroller of the opportunity to issue a final ruling on the matters addressed in the Interpretive Letters when he is faced with an actual and present controversy, and would discourage the beneficial practice of issuing interpretive rulings.

Plaintiffs argue that judicial review at this time would avoid the complexities and hardships of a subsequent order requiring national banks to divest themselves of their title insurance operations. This argument, however, bears more on the issue of hardship to the parties if there is no judicial review than on the issue of whether judicial review would foster rather than impede

effective enforcement and administration by the agency.

The Court is of the opinion that judicial review at this time would impede efficient administration by the OCC.

### III. CONCLUSION

#### A. *Final Agency Action*

Section 704 of the APA only authorizes judicial review of agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court. 5 U.S.C. § 704. Having done a pragmatic analysis in accordance with *Abbott,* the Court finds that there has been no final agency action in this case for the following reasons: (1) the Interpretive Letters were advisory opinions of subordinate officials rather than definitive statements of the OCC's position; (2) the Letters do not have the status of law as they do not " 'impose an obligation, deny a right, or fix some legal relationship as a consummation of the administrative process,' " *Air California,* 654 F.2d at 621 (citations omitted); (3) the Letters were written in response to hypothetical questions; (4) the Comptroller's August 6, 1986 letter does not contain the necessary assurances of deliberativeness to assure finality; and (5) the OCC has stated its willingness to reconsider the matters addressed in the Letters. For all of these reasons, the Court finds that there has been no final agency action in this case.

#### B. *Ripeness*

In Abbott, the Supreme Court stated: The injunctive and declaratory judgment remedies are discretionary and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy "ripe" for judicial resolution. *Abbott,* 387 U.S. at 148, 87 S.Ct. at 1515. The Court is of the opinion that the issues presented in Plaintiffs' Complaint For Declaratory and Injunctive Relief are not "ripe" for judicial review for the following reasons: (1) further administrative proceedings are both contemplated and likely to occur when an actual and present contro-

versy comes before the OCC; (2) there has been no final agency action in this case; (3) the interests of the Court and the OCC in postponing review until the question arises in some more concrete and final form outweigh the hardship to the parties of withholding review; and (4) judicial resolution of these issues will impede effecient administration by the OCC.

ACCORDINGLY, IT IS ORDERED that the Defendants' Motion to Dismiss is GRANTED and this case is DISMISSED for lack of jurisdiction.

SIGNED AND ENTERED.