**PENNZOIL COMPANY et al.,
Petitioners,**

v.

**FEDERAL ENERGY REGULATORY
COMMISSION, Respondent.**

No. 80–1492.

United States Court of Appeals,
Fifth Circuit.

May 20, 1981.

Baker & Botts, Washington, D. C., Charles M. Darling, IV, Charles E. Suffling, Washington, D. C., Patricia Curran, Julie Langdon, Pennzoil Co., Houston, Tex., for Pennzoil Co.

Jennifer Waters, Frederick Moring, Washington, D. C., for Associated Gas Distributors.

Peabody, Rivlin, Lambert & Meyers, Ralph A. Simmons, Jeremiah D. Lambert, Susan M. Liss, John T. Schell, Washington, D. C., for Independent Oil & Gas Assn. of West Virginia.

Jeffrey G. Shrader, Tulsa, Okl., for Williams Exploration Co.

Charles M. Darling, IV, Charles E. Suffling, Baker & Botts, Washington, D. C., for Ashland Exploration, Inc., General American Oil Co. of Texas, Texasgulf Inc. and Pogo Producing Co.

J. Paul Douglas, Jerome Nelson, Sol., Washington, D. C., for Federal Energy Regulatory Commission.

John E. Holtzinger, Jr., Karol Lyn Newman, Washington, D. C., for Consolidated Gas Supply Corp.

Letitia Z. Taitte, Robert D. Haworth, Charles J. McClees, Jr., Houston, Tex., for Mobil Oil Corp. et al.

C. Roger Hoffman, Martin N. Erck, Douglas W. Rasch, Houston, Tex., for Exxon Corp.

Dennis Lane, Richard A. Solomon, Washington, D. C., for Public Service Comm. of the State of New York.

Phyllis Rainey, Michael B. Silva, Houston, Tex., Charles M. Darling, IV, Washington, D. C., for Tenneco Oil Co.

James P. Holland, Charleston, W. Va., for Columbia Gas Transmission Corp.

Larry Pain, C. J. Roberts, John L. Williford, Bartlesville, Okl., for Phillips Petroleum Co.

Edward H. Gerstenfield, Bethesda, Md., for Carnegie Natural Gas Co.

Charles H. Shoneman, Bracewell & Patterson, Paul W. Fox, Washington, D. C., for Damson Oil Corp.

Lauren Eaton, Lawrence E. Glenn, Robert W. Fuller, A. Paul Brandimarte, Jr., Houston, Tex., for Gulf Oil Corp.

Robert P. Thibault, Karen A. Berndt, Ralph J. Pearson, Jr., Houston, Tex., for Texaco, Inc.

Roscoe C. Elmore, Jr., B. James McGraw, Houston, Tex., for Cabot Corp.

Amy M. Auslander, Augustine A. Mazzei, Jr., Pittsburgh, Pa., for Equitable Gas Co.

David C. Henri, Cloy D. Monzingo, Roger L. Brandt, Houston, Tex., for Getty Oil Co.

Stanley W. Balis, William T. Miller, Washington, D. C., for Cities of Charlottesville and Richmond, Virginia.

William T. Benham, Chicago, Ill., for Amoco Production Co.

William R. Coleman, Joseph P. Stevens, Brooklyn, N. Y., for Fuel Resources, Inc.

Ronald D. Hurst, Paul W. Hicks, Dallas, Tex., for Placid Oil Co.

Michael G. Maloney, Edward J. Kremer, Jr., Albert D. Hoppe, Dallas, Tex., for Atlantic Richfield.

Robert A. Hasty, Jr., Thomas G. Johnson, Jr., Shell Oil Co., Houston, Tex., for Shell Oil Co.

Kenneth L. Riedman, Jr., Lois Ellen Gold, Los Angeles, Cal., for Union Oil Co.

Before HENDERSON, ANDERSON and SAM D. JOHNSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

The petitions in this proceeding seek review of two orders, Opinion No. 77 and the May 2, 1980, denial of the application to rehear Opinion No. 77, of the Federal Energy Regulatory Commission ("Commission"). Opinion No. 77 contains guidelines for the interpretation of pricing clauses in contracts regarding the sale of natural gas by producers to pipelines. The Commission and Consolidated Gas Supply Corporation ("Consolidated") each filed motions to dismiss these petitions. Because we conclude that the two orders of the Commission are not ripe for judicial review, we dismiss these petitions.

In 1974, the Independent Oil and Gas Association of West Virginia ("IOGA") filed two petitions[1] with the Federal Power Commission ("FPC") seeking higher rates for its members and other small producers in West Virginia which sell natural gas to four interstate pipelines: Columbia Gas Transmission Corporation ("Columbia"), Consolidated, Carnegie Natural Gas Company ("Carnegie"), and Equitable Gas Company ("Equitable"). These petitions eventually resulted in two settlement agreements between the producers and the pipelines approved by the FPC. Both settlements had pricing clauses commonly known as area rate clauses, providing for escalation of rates upon occurrence of certain events. The wording of the area rate clauses were slightly different in the two settlements. The settlement in Docket No. RI74–188 provided for an adjustment in rate upon "the issuance by the [Federal Power] Commis-

sion, or any successor governmental authority having jurisdiction hereof hereafter, of a valid order establishing a just and reasonable ceiling rate." The settlement in Docket No. RI75–21 stated that rates may increase upon "the issuance by the [Federal Power] Commission, or any governmental authority having jurisdiction over the sales covered by this Settlement Proposal, of an order, decision or policy establishing a rate or rates. . . ."

After the approval of these two settlement provisions, Congress passed the Natural Gas Policy Act of 1978 ("NGPA"), 15 U.S.C.A. §§ 3301 et seq. (West Supp.1980), authorizing higher prices for various categories of natural gas. In December, 1978, Columbia filed petitions seeking clarification of the FPC orders approving the settlement agreements. Specifically, Columbia sought a ruling that the area rate clauses authorize producers to charge and collect the higher applicable ceiling prices under the NGPA.[2] The presiding administrative law judge ("ALJ") in August, 1979, issued an initial decision concluding that neither settlement authorized collection of NGPA rates.

On March 4, 1980, the Commission issued Opinion No. 77[3] remanding the proceedings to the ALJ for further consideration of the area rate clauses in light of the standards respecting contract interpretation announced therein. The Commission stated that the standards elaborated in Opinion No. 77 were refinements of its general rules concerning interpretation of area rate clauses promulgated in the Order 23 series.[4]

---

1. Independent Oil and Gas Association of West Virginia, Docket Nos. RI74–188 and RI75–21.

2. Equitable and Consolidated contested Columbia's interpretation of the settlement agreements.

3. Independent Oil & Gas Association of West Virginia, Docket Nos. RI74–188 and RI75–21, Opinion No. 77, Opinion and Order Reversing Initial Decision, Remanding and Consolidating Proceedings, Initiating Hearings, Establishing Procedures and Granting Intervention (March 4, 1980).

4. See Order No. 23, Docket No. RM79–22 (March 13, 1979); Order on Rehearing of Order No. 23, Docket No. RM79–22 (May 11, 1979); Order No. 23–A, Docket No. RM79–22 (June 12, 1979); Order 23–B, Docket No. RM79–22 (June 21, 1979); Order on Rehearing of Order No. 23–B, Docket No. RM79–22 (Aug. 6, 1979); and Order on Rehearing of Order No. 23–A, Docket No. RM79–22 (Aug. 13, 1979).

This panel on this date also publishes its decision reviewing the Order No. 23 series. See Pennzoil Co., et al. v. Federal Energy Regulatory Commission, 645 F.2d 360 (5th Cir. 1981).

The Commission stated that the standards announced in Opinion No. 77 would be followed in other proceedings involving the question of contractual authorization for collection of NGPA rates. The significant problem, as perceived by the Commission, was whether area rate clauses agreed upon while only the Natural Gas Act ("NGA"), 15 U.S.C.A. §§ 717 *et seq.* (West 1976), was in effect limited escalations to just and reasonable rates established by administrative agencies applying the standards of that Act, or whether area rate clauses could be read more expansively to include escalation to ceiling prices established by a statute such as the NGPA. The Commission ruled that unless there was specific inclusion or exclusion of statutory rates, reliable and probative extrinsic evidence would be admissible with respect to the issue of intent. (Opinion No. 77, p. 8). Generally, the Commission will give effect to the intent ascribed by the parties to the contractual language. (*Id.* at p. 10). Where there is disagreement among the parties regarding the interpretation of the area rate clause, the contract will be interpreted on the basis of the text and reliable and probative extrinsic evidence. (*Id.* at pp. 10–11). Where there is disagreement as to intent and there is no conclusive reliable and probative extrinsic evidence, the Commission noted that it would generally find that an area rate clause would not authorize all NGPA rates if the clause referred to rates established by an administrative body, if it coupled reference to the administrative body to the "just and reasonable" standard of the Natural Gas Act and if it contained no language uncoupling that link. Where those three factors are present, the Commission would generally find authorization to collect only cost-based NGPA rates, namely, those provided for in Sections 104 and 106(a) of the

NGPA, 15 U.S.C.A. §§ 3314 and 3316(a). (*Id.* at p. 11). Where the parties to a contract agreed on an interpretation, but that interpretation is contested by a third party, the mutual understanding controls unless the language expressly excludes rates set by statute or the third party can produce reliable and probative extrinsic evidence specifically contradicting the mutual understanding. (*Id.* at p. 16). The Commission noted that the interpretive standards enunciated did not delineate the only reasonable interpretations of such clauses.

In response to applications for rehearing, the Commission stated in an order dated May 2, 1980,[5] that Opinion No. 77 was both interlocutory and procedural, and made no final determination of the rights of any party. The Commission also announced that it would have opportunity to reconsider and clarify the views expressed in Opinion No. 77 when the proceeding returned to the Commission after the remand to the ALJ or when other proceedings came before the Commission presenting the issues discussed in Opinion No. 77. Accordingly, the applications for rehearing were dismissed.

Because the first petition for judicial review of Opinion No. 77 and the Commission's May 2 order was filed in this court, those subsequent petitions filed in other courts were transferred to this court and were consolidated with the initial petition. The Commission and Consolidated have since filed motions to dismiss these petitions on grounds that Opinion No. 77 and the May 2 order are not ripe for judicial review.

■ Both the NGA and the NGPA provide for judicial review by the court of appeals of orders and rules of the Commis-

The petitioners and intervenors disagree among themselves as to how much Opinion No. 77 alters or follows the general rules concerning area rate clauses announced in the Order 23 series. Petitioners and intervenors representing consumer interests argue that the standards in Opinion No. 77 are "substantive modifications" of the rules enunciated in the Order 23 series. IOGA maintains that Opinion No. 77 does not "fundamentally alter" the rules of the

Order 23 series. Because we do not address the merits, we express no opinion on this point.

5. Independent Oil & Gas Association of West Virginia, Docket Nos. RI74–188 and RI75–21, Order Granting Joint Motion for Clarification, Dismissing Applications For Rehearing, And Denying Without Prejudice Requests For Reconsideration or Clarification (May 2, 1980).

sion.[6] Even though none of the relevant statutes respecting judicial review expressly impose a requirement of ripeness, the courts have stated that the Commission's actions must be ripe for judicial review before they will address the merits of any petition. *Federal Power Commission v. Metropolitan Edison Co.*, 304 U.S. 375, 58 S.Ct. 963, 82 L.Ed. 1408 (1938); *ECEE, Inc. v. Federal Energy Regulatory Commission*, 611 F.2d 554 (5th Cir. 1980); *Atlanta Gas Light Co. v. Federal Power Commission*, 476 F.2d 142 (5th Cir. 1973). This requirement is one which applies to the action of other agencies as well. *Federal Trade Commission v. Standard Oil*, — U.S. —, 101 S.Ct. 488, 66 L.Ed.2d 416, (1980); *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Columbia Broadcasting System v. United States*, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942).

In *Abbott Laboratories*, the Supreme Court held that the issue of ripeness for judicial review requires a court to evaluate both "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." 387 U.S. at 149, 87 S.Ct. at 1515. Four important factors the Supreme Court utilized in making this evaluation are: (1) whether the issues presented are purely legal; (2) whether the challenged agency action constitutes "final agency action," within the meaning of Section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 704 (West 1977); (3) whether the challenged agency action has or will have a direct and immedi-

ate impact upon the petitioners; and (4) whether resolution of the issues will foster, rather than impede, effective enforcement and administration by the agency. *Abbott Laboratories v. Gardner*, 387 U.S. at 149–54, 87 S.Ct. at 1515–18; *ECEE, Inc. v. Federal Energy Regulatory Commission*, 611 F.2d at 556–557. These factors indicate that these petitions are not ripe for review.

First, the petitioners argue that the issues presented are purely legal. They are not contesting the application of interpretive standards to a contract or the outcome of such application. Instead, they attack the standards themselves as creating illegal presumptions and burdens of proof in contract interpretation. As described, the issues are indeed purely legal. However, it is clear this case is much like *Toilet Goods Association v. Gardner*, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967), a companion case to *Abbott Laboratories*. A significant factor against judicial review in *Toilet Goods* was that review of the regulations there would stand on a much surer footing in the context of an application to a specific factual framework. 387 U.S. at 163–64, 87 S.Ct. at 1524. In this case, the guidelines in Opinion No. 77 are complex. A specific guideline is often qualified as "generally" calling for a certain result and frequently requires a balancing of several factors. These complexities and subtleties reveal that our task will be aided when we see these guidelines applied to a specific area rate clause and a developed record.[7]

**6.** Section 19(b) of the NGA, 15 U.S.C.A. § 717r(b) (West 1976), provides in pertinent part:

Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the court of appeals of the United States. . . .

Section 506 of the NGPA, 15 U.S.C.A. § 3416 (West Supp.1980), is a complex statute specifying the right to judicial review of action under NGPA. It has two separate provisions dealing with review of orders and review of rules. Section 506(a)(4), dealing with judicial review of orders, provides in pertinent part:

Any person who is a party to a proceeding under this chapter aggrieved by any final order issued by the Commission in such pro-

ceeding may obtain review of such order in the United States Court of Appeals . . . .

Section 506(b) of the NGPA, 15 U.S.C.A. § 3416(b) (West Supp.1980), dealing with judicial review of rules, provides in pertinent part:

Except as provided in subsections (a) and (c) of this section, judicial review of any rule or order, within the meaning of section 551(4) of Title 5, issued under this chapter may be obtained in the United States Court of Appeals for any appropriate circuit pursuant to the provisions of chapter 7 of Title 5 . . . .

**7.** *See Pacific Gas & Electric Co. v. Federal Power Commission*, 506 F.2d 33 (D.C.Cir.1974), where a factor in finding judicial review of an FPC order respecting natural gas curtailment policy inappropriate was the lack of sufficient evidentiary record. 506 F.2d at 49.

■ The Commission's actions in Opinion No. 77 are not final within the meaning of § 10 of the Administrative Procedure Act. The determination of the finality element is to be done in a pragmatic way. *Federal Trade Commission v. Standard Oil Co., supra; Abbott Laboratories v. Gardner, supra.* The petitioners here argue that Opinion No. 77, with its guidelines respecting interpretation of area rate clauses, was stated to be applicable in other proceedings and has been used in proceedings involving third-party protests of interpretations of area rate clauses agreed upon by producers and pipelines.[8] As further indicia of finality, they point to the fact that the Commission gave its order an opinion number and announced the guidelines in the Commission's newsletter without reference to the facts of the case. We believe the Commission's statement in its May 2 order—that Opinion No. 77 is interlocutory and that it would reconsider and clarify Opinion No. 77 when the IOGA settlement proceedings return to the Commission or when any other proceeding applying Opinion No. 77 is reviewed by the Commission—is influential. We are aware that the characterization given by an agency of its action is not always decisive, *Columbia Broadcasting System v. United States,* 316 U.S. 407, 416, 62 S.Ct. 1194, 1199, 86 L.Ed. 1563 (1942); but, it is also true that an agency's description is evidence of its character. *Pacific Gas & Electric Co. v. Federal Power Commission,* 506 F.2d 33 (D.C.Cir.1974). There is no reason in this case to doubt that the Commission will hear any request for reconsideration of Opinion No. 77 at the appropriate time and, in light of a fully developed record, revise Opinion No. 77 if appropriate. Therefore, judicial review at this time would serve no purpose. *See ECEE, Inc. v. Federal Energy Regulatory Commission,* 611 F.2d at 557.

■ Third, Opinion No. 77 does not have a direct or immediate impact upon petitioners. In *Atlanta Gas Light Co. v. Federal Power Commission, supra,* we noted that immediate impact means that the order of the Commission must be "definitive," that is, the order must have "some substantial effect on the parties which cannot be altered by subsequent administrative action." 476 F.2d at 147. The impact on petitioners here is not "definitive" since it is unclear whether petitioners will be adversely affected by Opinion No. 77 once it is properly applied to the particular settlements in question. The orders here, setting guidelines for the ALJ to apply in interpreting area rate clauses, are similar to the procedural orders in *Columbia Nitrogen Corp. v. Federal Power Commission,* 559 F.2d 377 (5th Cir. 1977), which we dismissed for lack of a threat of irreparable harm. The only impact which petitioners assert they would suffer if Opinion No. 77 is not now reviewed is delay in final resolution of the IOGA settlement proceeding and the proceedings now in progress involving third-party consumer protests.[9] There is no suggestion that delayed judicial review would result in irreparable loss of gas, as we found decisive in *Atlanta Gas Light Co.* There is

---

8. *See:*

Initial Decision in *Transcontinental Gas Pipe Line Corp.,* Docket No. GP80–24, Issued May 8, 1980.

Initial Decision in *Michigan-Wisconsin Pipe Line Co.,* Docket No. GP80–15, Issued July 17, 1980.

Initial Decision in *Mountain Fuel Supply Co.,* Docket No. GP80–30, Issued Nov. 28, 1980.

Initial Decision in *Valley Gas Transmission, Inc.,* Docket No. GP80–60, Issued Nov. 28, 1980).

Some petitioners maintain that the guidelines announced in Opinion No. 77 were in reality rules and not merely reasoning within an adjudication, despite the Commission's statements that it was merely interpreting the rules announced in its Order 23 series after formal rulemaking proceedings. Without getting into the difficulties distinguishing rulemaking from adjudication, *see* Davis, *Administrative Law Treatise,* § 7:2 (1979), *British Caledonian Airways, Ltd. v. Civil Aeronautics Board,* 584 F.2d 982 (D.C.Cir.1978), we conclude that even if this is a rulemaking proceeding, it is not final for the reasons enunciated in our opinion.

9. It is unclear that our dismissal of these petitions would add significantly to any delay in resolution of Opinion No. 77, as the ALJ has reached his initial decision in light of Opinion No. 77 and the proceeding is now before the Commission again.

neither the intrusion into the petitioners' day-to-day business nor the imposition of a Hobson's choice on the petitioners by means of a regulation carrying criminal and civil penalties as the Supreme Court found significant in *Abbott Laboratories* and in a second companion case, *Gardner v. Toilet Goods Association*, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967). Accordingly, we find no definite impact on petitioners.[10]

Fourth, we believe resolution of this question would not foster effective administration by the Commission. The Commission will receive little guidance from this court if we pass on guidelines which the Commission may wish to amend upon reconsideration. We can sympathize with the petitioners' desire for rapid resolution of this issue, but in light of the lack of ripeness of Opinion No. 77, judicial review at this time would not be helpful.[11] Moreover, since we publish this opinion simultaneously with our opinion dealing with Order 23, *Pennzoil Co. et al. v. Federal Energy Regulatory Commission*, 645 F.2d 360 (5th Cir. 1981), judicial and administrative economy will be served by having the Commission's reconsideration of Opinion No. 77 made in light of our opinion respecting Order 23.

Because we conclude the issues raised in this case are not ripe for review, we dismiss without prejudice.

PETITIONS DISMISSED WITHOUT PREJUDICE.

---

**10.** Other cases in which a sufficiently direct and immediate impact has been found are: *ECEE, Inc. v. Federal Energy Regulatory Commission, supra* (petitioners placed in dilemma as to how to preserve right of judicial review); *Columbia Broadcasting System v. United States, supra* (regulations to be reviewed had force of law with drastic penalty and sanction for noncompliance); *Conway Corp. v Federal Power Commission*, 510 F.2d 1264 (D.C.Cir. 1975), *aff'd.* 426 U.S. 271, 96 S.Ct. 1999, 48 L.Ed.2d 626 (1976) (ruling by FPC that it would not hear certain discriminatory pricing practices reviewable since without judicial review, FPC would never hear such claims); *Phillips Petroleum Co. v. Federal Power Commission*, 475 F.2d 842 (10th Cir. 1973), *cert. denied* 414 U.S. 1146, 94 S.Ct. 901, 39 L.Ed.2d 102 (1974) (procedural ruling reviewable when it affected fundamental rights and erroneous ruling would render whole proceeding a nullity); *Shell Oil Co. v. Federal Power Commission*, 531 F.2d 1324 (5th Cir. 1976) (order reviewable which threatened party with irreparable loss of funds).

**11.** Petitioners and intervenors representing consumer groups suggest that Opinion No. 77 and the May 2 Order are analogous to orders of FERC deciding *Mobile-Sierra* claims. *See United Gas Pipe Line Co. v. Mobile Gas Service Corp.*, 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956); *Federal Power Commission v. Sierra Pacific Power Co.*, 350 U.S. 348, 76 S.Ct. 368, 100 L.Ed. 388 (1956). The *Mobile-Sierra* doctrine holds that a utility may not file a revised rate schedule under section 205(d) of the Federal Power Act, 16 U.S.C.A. § 824d(d) (West 1974), in contravention of its contractual obligations. Courts have reviewed the Commission's acceptance or rejection of such rate filings. *Papago Tribal Utility Authority v. Federal Energy Regulatory Commission*, 610 F.2d 914 (D.C.Cir.1979); *Appalachian Power Co. v. Federal Power Commission*, 529 F.2d 342 (D.C. Cir.), *cert. denied* 429 U.S. 816, 97 S.Ct. 58, 50 L.Ed.2d 76 (1976). As noted by the District of Columbia Circuit in *Papago Tribal Utility Authority v. Federal Energy Regulatory Commission*, 628 F.2d 235 (D.C.Cir.1980), cert. denied —— U.S. ——, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980); *Mobile-Sierra* issues would not again be addressed by FERC once it has decided to accept or reject a rate filing. Appellate review of the *Mobile-Sierra* issue would not disrupt any subsequent FERC proceedings with respect to the rate at issue. *Id.* at p. 247. Also, in a *Mobile-Sierra* claim, the appellate court is to rule on FERC's application of a particular contractual clause to a specified rate. We do not believe that the *Mobile-Sierra* doctrine provides ripeness in the instant case. Although this case does involve contract interpretation, as in the *Mobile* and *Sierra* cases, the contractual interpretation question here will not be finally decided by the Commission until it reviews the ALJ's decision on remand.